PEOPLE v KULICK

Docket No. 151844. Submitted October 18, 1994, at Lansing. Decided March 7, 1995, at 9:10 A.M. In lieu of granting leave to appeal, the case is remanded to the Court of Appeals for reconsideration in light of *People v Bohoda,* 448 Mich 261 (1995). 449 Mich —.

William L. Kulick was convicted by a jury in the Genesee Circuit Court, Bruce A. Newman, J., of two counts of felonious assault and was subsequently convicted of being an habitual offender, third offense, at a bench trial before the same judge. The defendant appealed.

The Court of Appeals *held:*

1. The defendant was deprived of a fair and impartial trial on the charges of felonious assault as a result of the prosecutor's comments during closing argument. The prosecutor improperly vouched for the credibility of the prosecution's witnesses by remarking on their personalities, neutrality, willingness to testify, truthfulness, and integrity. The prosecutor also improperly presented his personal opinion that the defendant was guilty.

2. The trial court did not err in failing to read to the jury CJI2d 7.17, the instruction setting forth the rule that there is no duty to retreat while in one's own dwelling, because a defendant is excused from a duty to retreat only if the defendant is in inhabited physical structures within the curtilage of the defendant's home. In this case, the incident that gave rise to the charges occurred outside the defendant's home.

3. The trial court did not abuse its discretion in allowing the late endorsement of a res gestae witness on the basis of a need to rebut unexpected testimony offered by the defense.

Reversed.

PROSECUTING ATTORNEYS — MISCONDUCT — IMPROPER CLOSING ARGUMENTS.

A prosecutor may not vouch for the credibility of a witness or

REFERENCES

Am Jur 2d, Trial §§ 634, 699.

Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern state cases. 88 ALR3d 449.

Propriety and prejudicial effect of comments by counsel vouching for credibility of witness—state cases. 45 ALR4th 602.

offer a personal opinion regarding a defendant's guilt when making closing arguments; a conviction will be reversed where improper comments by the prosecutor deprive the defendant of a fair and impartial trial.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Arthur A. Busch,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appeals, Research, and Training, and *Morris R. Kent,* Assistant Prosecuting Attorney, for the people.

*Mueckenheim & Mueckenheim, P.C.* (by *Mercedes D. Mueckenheim*), for the defendant on appeal.

Before: NEFF, P.J., and MARILYN KELLY and P. R. JOSLYN,* JJ.

PER CURIAM. Following a consolidated jury trial, defendant was convicted of two counts of felonious assault. MCL 750.82; MSA 28.277. He was then convicted of being an habitual offender, third offense. MCL 769.11; MSA 28.1083. The court sentenced him to two concurrent sentences of two to eight years' imprisonment. Defendant appeals as of right. He claims misconduct by the prosecutor relating to comments during closing argument and error by the trial court in the jury instructions. He asserts that a res gestae witness was not timely endorsed and should not have been permitted to testify. We reverse on the basis of misconduct by the prosecutor.

I

A

The test of misconduct by the prosecutor is

---

* Circuit judge, sitting on the Court of Appeals by assignment.

whether a defendant was denied a fair and impartial trial. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989). Issues of misconduct by a prosecutor are decided case by case. The reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *People v Legrone,* 205 Mich App 77, 82; 517 NW2d 270 (1994).

A prosecutor may not vouch for the credibility of a witness. *People v Erb,* 48 Mich App 622, 631; 211 NW2d 51 (1973). A prosecutor may not suggest that the government has some special knowledge that the witness is testifying truthfully. *People v Bahoda,* 202 Mich App 214, 217; 508 NW2d 170 (1993), lv gtd 445 Mich 880 (1994). A prosecutor may not ask the jury to convict a defendant on the basis of the prosecutor's personal knowledge or the prestige of the office or that of the police. *People v Ignofo,* 315 Mich 626, 631-636; 24 NW2d 514 (1946); *Bahoda, supra,* p 218; *People v Fuqua,* 146 Mich App 250, 254; 379 NW2d 442 (1985).

In this case, defendant asserts that the prosecutor both improperly vouched for the credibility of witnesses and improperly vouched for defendant's guilt during his closing argument. We agree.

B

During closing argument, the prosecutor repeatedly and improperly vouched for the people's witnesses. Excerpts from his argument, which form the basis for reversal, are set out below. We emphasize that it is the cumulative effect of the statements, rather than any isolated statement, that leads us to conclude that reversal is required. We cite portions of his closing argument because examples of the type and frequency of statements

that persuade this Court that misconduct has occurred are frequently omitted from its opinions.

In this case, the prosecutor made the following comments during closing argument:

> None of the People's witnesses saw any tire iron. The police officer saw no tire iron and he's totally neutral. He just went there and answered the call.
>
> *   *   *
>
> Now, there's Mr. Fisher, the next door neighbor. He's a nice enough guy, and apparently he thinks quite a bit of the Defendant, and he says that the whole neighborhood loved him, and that maybe true.
>
> *   *   *
>
> Amy Smith said there was no tire iron. Let's talk about that for a while. Supposedly, she said in the hallway that she didn't want to testify. I didn't see any reluctance on her part to come in here to testify. I'm the one that asked her if she would testify. That statement just doesn't make sense at all, and where did it come from? That came from the Defendant's new girlfriend, the one he's been going with for a year.
>
> *   *   *
>
> So I ask you to look at some of these witnesses and the motives and who's the friend of who. Now, on the other side you can say, "Well, hey, how about the same thing with these guys? They're, you know," I don't think so. They're the ones with the injuries. They're the ones with the bashed-in heads. I don't think this is a matter of self-defense. I think the Defendant really lost his cool. I believe the witnesses. I don't think those two guys went over there as bouncers or something to take this guy and slam them [sic] around.
>
> *   *   *
>
> Also, Mr. Fisher, I've told you he's a pretty nice guy, the next door neighbor. He backs up the story of Rebecca Smith that she had permission to come and get the furniture.

\* \* \*

I think the real witnesses are the players, the ones that were in the tussle, the ones that were assaulted.

\* \* \*

If these guys wanted to do wrong, that was their chance. They had the hammer. It's two against one. And they certainly had reason to be a little upset. Even the police officer said, "I would have been upset if I'd a been hit like that." Well, you know why they weren't upset, 'cause they're just not that kind of people. They just went over there to help this lady move this furniture.

\* \* \*

I don't think she said, "Look, I'll give each of you guys five bucks to get your heads bashed in. I want to get this guy in court and send him to jail." There's no evidence of that. The only evidence is that in December of 1990 she was angry, and probably rightfully so.

Finally, at the end of the prosecutor's rebuttal, he said:

Consider all those things. Consider the evidence. The evidence that you know for sure, and then consider the witnesses' motives and their credibility. Forget about whose furniture it was. Forget about trespassing. And forget about Rebecca Smith. Think about the victims. *I think beyond a reasonable doubt this man is guilty.* Thank you. [Emphasis added.]

We again emphasize that no single comment, standing alone, would automatically require reversal. But, when read together, the prosecutor's statements support defendant's claim that he did more than set out the evidence and fit it to his theory of the case. He evaluated the personality, neutrality, willingness to testify, truthfulness, and

integrity of the people's witnesses and vouched for their truthfulness.

C

In the past, our Court has found instances where vouching for the credibility of witnesses did not require reversal. In *People v Hart,* 161 Mich App 630; 411 NW2d 803 (1987), defense counsel told the jury that the prosecutor would not vouch for his witnesses, because they were not "pillars of the community." The prosecutor responded that he would vouch for them. Our Court concluded that, while the prosecutor's response was improper, reversal was not required. The prosecutor had responded to arguments made by defense counsel. Moreover, the court had given a curative instruction. *Id.,* p 637.

Here, in contrast, the prosecutor's comments were not in response to defense counsel's comments. Moreover, the court did not give a curative instruction. The jury was not alerted to the possibility that they faced the risk of adopting the prosecutor's evaluations of the witnesses as their own.

Our Court considered the question of the prosecutor vouching for a defendant's guilt in *Bahoda, supra,* pp 219-220. There, the prosecutor announced that "this was a perfect case. These dope cases don't get any better." Our Court concluded:

> It is possible that the prejudice resulting from some of the errors below could have been cured by a timely instruction. In the aggregate, however, and in light of the timing of the trial and of the credibility disputes involved, these errors undoubtedly deprived defendant of a fair trial. [*Id.,* p 220.]

The prosecutor's comments here are not as ex-

treme as those in *Bahoda*. We are inclined to believe that the prosecutor intended to say, "I believe the evidence has shown that defendant is guilty beyond a reasonable doubt." He made a similar comment early in his closing argument. Therefore, if defendant pointed only to this isolated statement to claim misconduct by the prosecutor, we would not find misconduct. We would conclude that the prosecutor misspoke or overstated his position, but that a single statement does not indicate an attempt to unduly influence the jury.

However, here, the prosecutor uttered the statement at the end of a series of assertions in which he evaluated the witnesses. He specifically told the jury which ones he considered believable. As a result, we are unable to conclude that, when he announced defendant's guilt, he misspoke, or that he intended anything other than what he said. In proclaiming to the jury, "I think beyond a reasonable doubt this man is guilty," he vouched for defendant's guilt. The jurors were not adequately protected from the risk that his opinion regarding defendant's guilt would prejudice them against defendant.

We hold that the cumulative effect of the prosecutor's comments, which repeatedly injected his opinions of the witnesses' credibility and defendant's guilt into closing arguments, amounted to misconduct by the prosecutor.

II

Defendant argues that the lower court erred in failing to read CJI2d 7.17 to the jury, setting forth the rule that there is no duty to retreat while in one's own dwelling. We disagree.

In *People v Godsey*, 54 Mich App 316, 321; 220 NW2d 801 (1974), this Court held that the no-duty-

to-retreat rule extended "only to inhabited outbuildings located within the curtilage of the home." The Court specifically rejected the notion that the rule extended to the outdoor portions of a curtilage. *Id.*

Here, all the witnesses testified that the altercation between defendant and the complainants, Robert Smith and Marc Heath, occurred outside defendant's home. Accordingly, the lower court did not err in failing to give the requested jury instruction. See also *People v Wytcherly*, 172 Mich App 213, 221; 431 NW2d 463 (1988), which states that a defendant is excused from a duty to retreat only if the defendant is in inhabited physical structures within the curtilage of his home.

### III

Defendant next argues that the lower court erred in allowing res gestae witness Amy Smith to testify at trial when the prosecutor did not endorse her until the middle of the trial. We disagree.

A prosecutor's endorsement of a witness is permitted at any time by leave of the court and for good cause shown. MCL 767.40a(4); MSA 28.980(1)(4). A trial court's decision to allow a late endorsement is reviewed for an abuse of discretion. *People v Canter*, 197 Mich App 550, 563; 496 NW2d 336 (1992).

In seeking leave to allow Ms. Smith to testify on rebuttal, the prosecutor argued that he had been surprised by defense testimony that one of the complainants carried a tire iron. The prosecutor indicated to the trial court that Ms. Smith's testimony would refute that fact. We conclude that the trial court did not abuse its discretion in finding good cause to allow Ms. Smith to testify.

Reversed.